NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FUSION SOURCING GROUP, INC., : | |
| : | **Civil Action No. 19-12289-CCC-AME** |
| Plaintiff, : | |
| : | |
| v. : | **OPINION and ORDER** |
| : | |
| POWEREX, INC., : | |
| : | |
| Defendants. : | |
| : | |

**ESPINOSA**, Magistrate Judge

**THIS MATTER** comes before the Court on the motion by Plaintiff Fusion Sourcing Group, Inc. ("Fusion") for leave to file an amended complaint pursuant to Federal Rule of Civil Procedure 15(a) [D.E. 98], and the joint motion of Fusion and Defendant Powerex, Inc. ("Powerex") to seal certain allegations in the proposed amended complaint [D.E. 109]. Fusion asserts the proposed amendment corrects the deficiencies noted in the District Court's February 24, 2023 Order [D.E. 96], which dismissed Count III of the Complaint [D.E. 1, 8]. Powerex opposes the motion to amend. [D.E. 103]. The Court has considered the parties' written submissions and, in its discretion, rules without oral argument. *See* Fed. R. Civ. P. 78. For the following reasons, Fusion's motion to amend and the joint motion to seal are **GRANTED**.

I.   BACKGROUND

   A.   Factual Allegations

Fusion, an independent sales representative company engaged in marketing and soliciting orders for certain electronic products, filed this action on May 8, 2019, asserting claims arising out of its commercial relationship with Powerex, a manufacturer and supplier of high-power

semiconductor products. [*See generally* D.E. 1, Compl.]. The Complaint provides the source for the following factual summary, and its allegations are taken as true for purposes of this Opinion.

Fusion and Powerex began their commercial relationship in or around 1986. [*Id.* ¶ 5]. Fusion served as Powerex's exclusive sales representative of certain products in an assigned territory. [*Id.*]. Powerex compensated Fusion by commission that was periodically modified by agreement and that varied based on customer type and sales amount. [*Id.* ¶¶ 5, 7].

In 2017, the parties entered into a written agreement, effective January 1, 2018, establishing variable commission rates ranging from three to nine percent of net sales. [*Id.* ¶ 8]. The agreement was silent on termination and "Fusion's right to commissions for orders placed post-termination procured by Fusion's pre-termination efforts." [*Id.* ¶ 9]. Fusion invested substantial resources to market and promote Powerex's products, which resulted in substantial sales to customers, including, in 2018, millions of dollars in orders from Moog, Inc. ("Moog"), "a leading manufacturer of precision control components and systems for the defense industry and supplier to the U.S. Department of Defense." [*Id.* ¶¶ 10-12]. As of the date of the Complaint, Fusion projected increased sales of Powerex products to Moog from 2019 to 2022. [*Id.* ¶ 12].

On January 9, 2019, Powerex terminated its commercial relationship with Fusion. [*Id.* ¶ 13]. Powerex purported to terminate Fusion pursuant to a clause in a document entitled "Manufacturer's Representative Agreement." [*Id.* ¶ 14]. According to the termination notice, Powerex "'w[ould] continue to pay commission through April 9, 2019 against all scheduled backlog orders that exist[ed] as of February 9, 2019 and shipped on or before April 9, 2019.'" [*Id.*]. Fusion claimed it never executed the "Manufacturer's Representative Agreement," or agreed to limit its sales commissions to the 90-day period invoked by Powerex. [*Id.* ¶ 15].

Based on these allegations, Fusion asserted five causes of action against Powerex, including that: (i) Powerex breached the 2017 written agreement by failing to pay Fusion sales commissions on orders "that were procured by Fusion's pre-termination efforts," including commissions on sales to Moog (Count I) [*id.* ¶¶ 16-21]; (ii) Powerex breached an implied covenant of good faith and fair dealing by terminating the 2017 written agreement in bad faith (Count II) [*id.* ¶¶ 22-31]; (iii) Powerex violated the New Jersey Sales Representatives' Act ("SRA"), N.J.S.A. § 2A:61A-1 *et seq.*, by failing to pay commissions for post-termination sales procured by its pre-termination efforts within 30 days of the date the commissions became due (Count III) [*id.* ¶¶ 32-39]; (iv) Powerex was unjustly enriched by the value of the services Fusion provided [*id.* ¶¶ 40-48], and (v) Powerex breached an implied contract when it failed to pay sales commissions that were due to Fusion, for which Fusion pleads a claim for *quantum meruit*—as an alternative to Counts I and II [*id.* ¶¶ 49-52].

B. <u>Procedural History</u>

On June 28, 2019, Powerex filed a motion to dismiss Count III pursuant to Federal Rule of Civil Procedure 12(b)(6). [D.E. 8]. Among other things, Powerex argued the claim failed because the SRA does not apply to commissions for post-termination sales. [D.E. 8-1 at 9-10]. Powerex answered the Complaint on February 28, 2020, while its motion to dismiss was pending. [D.E. 33]. After a September 18, 2019 conference, the Court issued a Pretrial Scheduling Order, which set a March 20, 2020 deadline to complete fact discovery, and a November 22, 2019 deadline for filing motions to amend pleadings. [D.E. 20 at 2-3]. The fact discovery deadline was extended several times, until March 18, 2022, but the deadline to file a motion to amend pleadings was not modified.

On February 24, 2023, while the parties completed expert discovery,[1] the District Court granted Powerex's motion to dismiss Count III of the Complaint. [D.E. 96]. The Court concluded the SRA applies only to commissions for "sales orders made prior to termination of the sales representative relationship." [*Id.* at 4 (citations omitted)]. The Court noted that a decision relied upon by Fusion "recognized the possibility of post-termination commissions (i.e., those that became due after termination based on prior sales), but did not contemplate (let alone decide) that future post-termination sales are subject to the SRA." [*Id.* at 5 (citations omitted)]. The Court emphasized the "distinction between sales orders (which must occur while the representative relationship exists) and commissions (which may become due even after the representative relationship ends if the sales were made prior to termination)." [*Id.* at 6 (citations omitted)]. Based on the foregoing, the District Court dismissed Count III of the Complaint, concluding it failed to state a claim under the SRA because, rather than "alleg[ing] any specific commissions owed 'as a result of the representative relationship' earned prior to termination that are unpaid," Fusion "point[ed] to 'expected' contracts that are not identified in the Complaint and appear not to exist at the time [it] filed its lawsuit." [*Id.* at 6-7 (citations omitted)].

Within a month of that decision, Fusion sought leave to file a motion to amend. In a letter emailed to the Court,[2] Fusion represented that the proposed pleading "includes specific detailed

---

[1] The expert discovery period closed on May 12, 2023 [D.E. 104], and the parties confirmed they completed expert depositions in a joint letter dated June 21, 2023. [D.E. 107].

[2] With the Court's permission, the parties emailed their competing letters concerning Fusion's request for leave to file a motion to amend.

4

allegations to address the issues raised in the [District Court's February 24 Order]."[3] After obtaining leave of Court, Fusion filed the pending motion to amend on April 21, 2023. [D.E. 98].

        C.      <u>Proposed Amendment</u>

Fusion asserts the proposed amendment "merely provides clarity and specificity as to the particular transactions Fusion bases it claims under the [SRA]." [D.E. 98-1 ¶ 5 (stating it asserted the SRA claim concerning "sales made during the course of the parties' relationship")].[4] Fusion contends the proposed pleading "does not raise any new facts or issues that would require or necessitate any new or additional fact discovery," and that Powerex's sales based on pre-termination orders "were the subject of discovery." [*Id.*].

Based on this Court's review of the proposed pleading, Fusion first seeks to add and amend allegations concerning its breach of contract claim (Count I), including its description of the 2017 written agreement. [*See* D.E. 99-1 ¶¶ 9, 18, 23]. Second, the proposed amended complaint adds allegations confirming Fusion's projection of Powerex sales to Moog from 2019 to 2021, and repeating that positive sales projection for "the next few years." [*Id.* ¶ 12].[5] Third, the proposed pleading includes a list of pre-termination orders for which Fusion alleges it is entitled to a sales commission for its pre-termination efforts. [*See id.* ¶¶ 19-22]. Finally, Fusion addresses the deficiency noted by the District Court's February 24 Order by amending the

---

[3] The District Court's February 24 Order was silent on whether the dismissal was with or without prejudice. [*See* D.E. 96].

[4] Fusion filed parts of the proposed amended complaint under seal based on its contention that it contains confidential information. [D.E. 98-1 ¶ 6]. The parties later filed the pending motion to seal. [D.E. 109].

[5] Like the Complaint, the proposed amended complaint states Fusion seeks commissions on ongoing sales to Moog procured due to Fusion's efforts. [D.E. 99-1 ¶¶ 24, 34]. Notably, even though discovery has closed and Fusion asserts no additional discovery is necessary, the proposed pleading states that updated sales records are necessary to determine the exact amount of unpaid commissions. [*Id.*].

5

paragraph describing the SRA violation to state that Powerex violated section 2 of that statute by failing and refusing "to pay Fusion commissions … on sales made based on pre-termination orders," including those listed in the preceding new paragraphs. [*Id.* ¶ 43].

## II.     MOTION TO AMEND

### A.     Legal Standards

Motions for leave to amend pleadings are generally governed by the liberal standard of Federal Rule of Civil Procedure 15(a)(2), which provides that "[t]he court should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, when a motion is filed after the deadline set by court order, it is subject not only to Rule 15(a)(2) but also to the more stringent standard of Rule 16(b)(4). Under Rule 16(b)(4), a party must demonstrate there is "good cause" to modify the Court's scheduling order and that it has acted with reasonable diligence despite the failure to comply with the order. *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."); *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010) ("Rule 16(b)(4) focuses on the moving party's burden to show due diligence."). If good cause and diligence are demonstrated, the Court then proceeds to analyze whether granting leave to amend is warranted under Rule 15(a)(2).

### B.     Good Cause under Rule 16(b)(4)

Good cause to bring a late motion to amend turns on the movant's diligence; thus, the Court considers whether Fusion "possessed, or through the exercise of reasonable diligence should have possessed, the knowledge necessary" to file the motion before the deadline. *Fermin v. Toyota Material Handling, U.S.A., Inc.*, Civ. No. 10-3755, 2012 WL 1393074, at *3 (D.N.J.

Apr. 23, 2012) (citations omitted). Here, whether Fusion exercised sufficient diligence to meet Rule 16(b)(4)'s standard is a close call. Nevertheless, for the following reasons, the Court finds Fusion has demonstrated sufficient good cause to satisfy the Rule.

Neither party directly addressed the Rule 16 standard. Fusion, however, argues it "promptly sought to comply" with the District Court's February 24 Order "by identifying the particular commissions it claims are due based on pre-termination orders in Count III." [D.E. 98-2 at 10 n. 3]. In turn, Powerex asserts the motion is untimely because Fusion filed it two years after receiving, in discovery, the information it seeks to add. [D.E. 103 at 6, 9]. Powerex thus urges the Court to reject Fusion's argument because Fusion could have but opted not to amend the Complaint in 2019, after being on notice of Powerex's Rule 12(b)(6) motion to dismiss. [*Id.* at 9 (stating that most Rule 12(b)(6) motions are met with a motion to amend)].

The Court finds that Fusion was sufficiently diligent in seeking to amend Count III to address the pleading deficiency noted in the District Court's February 24 Order. In the Complaint, as Count III, Fusion alleges Powerex violated the SRA by failing to pay "commissions for post-termination sales procured by Fusion's pre-termination efforts," which may include sales resulting from orders placed either pre- or post-termination. [D.E. 1 ¶ 38]. Based on that alleged violation, Fusion seeks to recover "all commissions due in accordance with the [2017 written] [a]greement and the [SRA]." [*Id.* at 9]. Having made those allegations, Fusion did not have any apparent reason to amend Count III before resolution of the motion to dismiss—other than to limit the scope of the claim to unpaid commissions for pre-termination orders, as provided by the SRA.

Leaving aside that Fusion may only seek sales commissions based on pre-termination orders under the SRA, the District Court also found Count III deficient because Fusion failed to "allege any specific commissions owed 'as a result of the representative relationship' earned prior to termination that are unpaid." [D.E. 96 at 6]. To that end, Fusion moved promptly—*i.e.*, in less than a month—to address the pleading deficiency by proposing an amended complaint that alleges it is owed sales commissions based on pre-termination orders, and that identifies those pre-termination orders, including specific unpaid commissions. [D.E. 98-2 at 14-15]. The fact that Fusion had obtained the sales information during early discovery does not mean it was on notice that Count III was deficiently pleaded.[6]

In addition to addressing this pleading deficiency, the proposed amendment includes new allegations concerning Fusion's breach of contract claim (Count I), which, as originally pled, could arguably be construed as being limited to sales commissions for post-termination orders. [*See* D.E. 1 ¶¶ 18-19].[7] Powerex appears to argue the proposed amended complaint expands the scope of that claim [D.E. 103 at 4-5] by describing the breach as Powerex's failure to pay commissions "on sales made in connection with orders placed before … and after the termination …." [D.E. 99-1 ¶ 23]. However, Fusion maintains that, with respect to all counts, it has always sought sales commissions based on pre- and post-termination orders that resulted from Fusion's pre-termination efforts. [*See* D.E. 98-2 at 11 (stating the proposed amendment "will [not] inject or introduce any new or additional factual or legal issues into the litigation"); *see also* D.E. 98-2

---

[6] Indeed, Fusion contends it "had no reason to believe the Complaint had any deficiencies, much less what they were," and that "[u]nder [Powerex's] theory, no plaintiff whose original complaint was dismissed without prejudice could ever amend to correct the deficiencies." [D.E. 105 at 7].

[7] As to all other Counts, the relief sought is unmistakably broader, referring to all commissions that were due and owing as of the date of the Complaint. [*See* D.E. 1 ¶¶ 25, 38, 45, 47, 50-51].

8

at 15 n. 4 (stating the proposed pleading "makes it clear that, with respect to all counts other than Count III, Fusion is seeking commissions on all sales based on both pre-termination and post-termination orders that resulted from [its] efforts as Powerex's sales representative")].

The Court concludes that the proposed amendment does not expand the scope of Count I. Although inartfully pled, the breach of contract claim appears to seek all unpaid sales commissions. [*See* D.E. 1 ¶¶ 17-19]. In the Complaint, Fusion describes the contractual breach as Powerex's failure and refusal "to pay Fusion all such commissions due based on Fusion's pre-termination efforts," and alleges that the 2017 written agreement, which forms the basis of the claim, "neither limited nor waived [Fusion's] right to receive commissions on orders it procured for Powerex during the term of the Agreement." [*Id.* ¶¶ 18-19].

Moreover, specifically in connection with Count III, Fusion seeks a judgment awarding it "all commissions due in accordance with the Agreement and the [SRA]." [*Id.* at 9]. While the Complaint expressly references Powerex's alleged obligation to pay sales commissions on post-termination orders, nowhere in the Complaint does Fusion limit or exclude any claim for unpaid commissions for pre-termination orders. That appears to have been the parties' understanding throughout the course of discovery. For example, in the parties' proposed joint discovery plan submitted in advance of the scheduling conference, Fusion stated it sought to recover, *inter alia*, "commissions on sales it procured pre-termination," and to obtain discovery "regarding Powerex's sales of products in Fusion's assigned territory during the term of the Agreement." [D.E. 19 at 2-3]. In a later status letter, Fusion noted it had sought documents "reflecting all orders and sales of [Powerex's] products, purchase orders, invoices, payments, quotes, forecasts

9

and related documents." [D.E. 31]. Finally, Fusion's counsel declares that Powerex's sales based on pre-termination orders "were the subject of discovery." [D.E. 98-1 ¶ 5].

Accordingly, while Fusion could have previously amended the complaint to add these new allegations, the Court cannot conclude that Fusion's conduct here was dilatory or lacked the requisite diligence required to meet the Rule 16(b)(4) standard. In the interest of assessing Fusion's merits arguments for leave to file the proposed amended complaint under Rule 15(a)(2), and in light of the Third Circuit's expressed preference "that cases be disposed of on the merits whenever practicable," *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 2004), the Court will exercise its discretion, in this instance, to relax the deadline for filing motions to amend, and will excuse any untimeliness of this motion.

C.      Leave to Amend under Rule 15(a)(2)

While Rule 15(a)(2) provides that leave to amend should be freely granted, it is well-established that courts retain discretion to deny such leave for equitable reasons, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies …, undue prejudice to the opposing party …, [and/or] futility of amendment …." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006). The Third Circuit has consistently recognized that "prejudice to the non-moving party is the 'touchstone for the denial of an amendment.'" *Arthur*, 434 F.3d at 204 (quoting *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993)). Here, Powerex argues leave to amend must be denied on grounds of undue delay, bad faith, dilatory motive, undue prejudice, and futility. The Court considers each argument in turn.

### 1. *Undue Delay, Bad Faith or Dilatory Motive*

Undue delay, as a basis for denying a motion for leave to amend, focuses on whether the party seeking leave has inexplicably failed to take advantage of previous opportunities to amend, resulting in unfair burdens to the court and the opposing party. *Arthur*, 434 F.3d at 204 (citations omitted); *see also Mullin v. Balicki*, 875 F.3d 140, 151 (3d Cir. 2017) ("While simple delay cannot justify denying leave to amend by itself, delay that is 'undue'—a delay that is protracted and unjustified—can place a burden on the court or counterparty, or can indicate a lack of diligence sufficient to justify a discretionary denial of leave."). The mere passage of time does not require that a motion to amend be denied on grounds of delay. *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001); *see also Arthur*, 434 F.3d at 205 ("There is, of course, no presumptive period in which a motion for leave to amend is deemed 'timely' or in which delay becomes 'undue.'").

As noted earlier, while Fusion was in possession of the facts underlying its motion, the purpose of the proposed amendment was to address the pleading deficiencies noted by the District Court in connection with Count III of the Complaint, and Fusion acted diligently to address those deficiencies by moving for leave to amend within a month of the decision. The remaining proposed amendments merely add factual allegations consistent with discovery obtained to date, and do not raise new claims, legal theories, or facts. While Fusion could have moved to add these allegations earlier, its request to amend the Complaint at this juncture will not result in unfair burdens to the Court's schedule or to Powerex, particularly as the amendment's scope is limited, and a trial date has not been set.

In turn, the question of bad faith requires the Court to focus on the litigant's reasons for not amending sooner. *Adams v. Gould, Inc.*, 739 F.2d 858, 868 (3d Cir. 1984). Powerex argues Fusion acted in bad faith and engaged in dilatory tactics when it failed to "take advantage of its many opportunities to amend … because it did not want to starkly establish that its claims to commissions in the future are not supported by actual sales." [D.E. 103 at 6]. Generally, some "extrinsic evidence" to indicate a party acted in bad faith must be shown. *Adams*, 739 F.2d at 868. Importantly, in this inquiry, "[t]he Court does not act as a finder of fact on a motion to amend," and thus, "will not weigh the evidence and make a decision on the merits of [the] proposed claims …." *Zelma v. Choice Energy, LLC*, Civ. No. 19-17535, 2020 WL 5201341, at *2 (D.N.J. Sep. 1, 2020). While the late timing of this motion is suboptimal, the Court cannot conclude, on this record, that Fusion acted in bad faith or with a dilatory motive. Fusion has represented that the purpose of the motion was to address a pleading deficiency in its SRA claim, which was the subject of extensive discovery prior to its dismissal almost four years after the filing of the action. [D.E. 98-1 ¶ 5]. Moreover, the proposed pleading otherwise "provides clarity and specificity as to the particular transactions [it] bases it claims …." [*Id.*].

    2.    *Undue Prejudice*

The proposed amendment will not unduly prejudice Powerex. Undue prejudice focuses on whether the non-moving party will face hardship if the amendment is permitted. *Cureton*, 252 F.3d at 273. Examples of undue prejudice include situations where the proposed amendment to the pleadings will "require the opponent to expend significant additional resources to conduct discovery and prepare for trial" or will "significantly delay the resolution of the dispute." *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004); *Cureton*, 252 F.3d at 273 (considering "whether

allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories"). Courts in this Circuit have also "consider[ed] whether amendment would impair the non-moving party's 'ability to present its case.'" *Diebler v. SanMedica Int'l, LLC*, Civ. No. 19-20155, 2021 WL 5013617, at *4 (D.N.J. Oct. 28, 2021), *aff'd*, 2022 WL 16552777 (D.N.J. Oct. 31, 2022). Those conditions are not present here.

Powerex argues it will expend significant additional resources if the proposed amendment is permitted because it will need to conduct additional discovery, "including potentially re-deposing Plaintiff's witnesses on the sales at issue and the circumstances surrounding exceptions to payment of commissions as set forth in the Agreement," obtaining "discovery on whether Fusion has already been properly compensated for the pre-termination orders," and amending expert reports to address the new allegations. [D.E. 103 at 10-11]. Fusion argues Powerex's claimed need for additional depositions "is devoid of specifics, and essentially boilerplate," and that Powerex has identified "no specific additional fact discovery that would be required, including when asked to so by the Court during the May 2, 2023 status conference." [D.E. 105 at 8]. Even if additional discovery were necessary, Fusion contends Powerex has failed to show how it will result in undue prejudice or substantial delay. [*Id.*].

The Court agrees with Fusion that reopening discovery is likely unwarranted because, other than repleading Count III, the proposed amendment "injects no new claims, legal theories or facts" and "implicates the exact same issues as those already presented by Count III." [D.E. 105 at 5; D.E. 98-2 at 11-12]. Significantly, the parties have engaged in extensive discovery on all claims, and as stated by Fusion, "the specific allegations regarding the sales made by Powerex based on pre-termination orders, as identified in paragraphs 19 and 21 of the proposed Amended

13

Complaint, were thoroughly probed in discovery and cannot come as any surprise." [D.E. 98-2 at 11 (citing Fusion's counsel's certification)]. Even if some additional discovery is required,[8] it does not appear that such discovery will so expand the scope of this action as to unduly prejudice Powerex. *See Diebler*, 2021 WL 5013617, at *4 ("[T]he expenditure of time, money, and effort alone is not grounds for a finding of prejudice." (citations and quotation marks omitted)). Accordingly, the Court concludes that permitting the proposed amendment will not significantly delay resolution of this action nor require expenditure of substantial additional resources.

### 3. *Futility*

Finally, futility does not constitute a basis to deny Fusion's motion to amend. Futility, in the context of assessing a Rule 15 motion, "means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) [hereinafter "*Burlington*"]; *see also In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002) (holding same). In assessing futility, the Court "applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Burlington*, 114 F.3d at 1434; *see also Massarsky v. General Motors Corp.*, 706 F.2d 111, 125 (3d Cir. 1983), *cert. denied*, 464 U.S. 937 (1983) (holding that a motion to amend may be denied on futility grounds when the amendment would not withstand a Rule 12(b)(6) motion).

---

[8] The Court finds no current basis to reopen discovery. Fusion's claims put at issue sales commissions based on pre- and post-termination orders from the outset of the case. Thus, Powerex has failed to explain why it did not conduct the discovery it now presumably seeks. To the extent Powerex believes, in good faith, additional discovery is necessary, the parties shall meet and confer and, within fourteen days of this Order, file a joint letter with the Court (of no more than 8 pages; 1.5 line spacing) addressing in detail any request to reopen discovery and setting forth the parties' respective positions.

The proposed amendment neither adds new legal claims nor expands Fusion's existing claims. Nonetheless, Powerex argues, in conclusory fashion, the proposed amendment is futile because Count III is duplicative of Fusion's breach of contract claim (Count I). [D.E. 103 at 12]. This Court disagrees. As an initial matter, despite previously moving to dismiss Count III and filing an answer addressing that Count, Powerex has never previously advanced such argument. Indeed, as a second affirmative defense, Powerex asserted this argument only with respect to Fusion's "alternative claims for relief in Counts IV and V." [D.E. 33 at 9]. In any event, Counts I and III do not appear to be duplicative given that the source of potential liability for each count is distinct—*i.e.*, the 2017 written agreement for Count I, and the SRA for Count III.

Additionally, the proposed revised Count III is not futile because Fusion has made a sufficient showing that it has cured the pleading deficiencies noted in the District Court's February 24 Order. The District Court held that the SRA only applies to commissions for "sales orders made prior to termination of the sales representative relationship," and that the Complaint failed to allege "any specific commissions owed 'as a result of the representative relationship' earned prior to termination that are unpaid." [*Id.* at 4, 6 (citations omitted)]. The proposed amendment expressly addresses those deficiencies by describing the SRA violation as Powerex's failure to pay Fusion sales commissions earned based on pre-termination orders, and including a list of specific sales for which it seeks recovery under the SRA. [D.E. 99-1 ¶¶ 19, 21, 43].

Powerex also states it intends to challenge the validity of all other claims under Rule 12 if the Court grants Fusion's motion. [D.E. 103 at 11]. Such an argument does not constitute a proper futility challenge to a proposed amendment that does not alter or expand the scope of any claim. Indeed, Powerex could have previously sought to dismiss those claims under Rule 12,

15

based on the theories it identifies in its opposition brief, before or during discovery. Instead, Powerex opted to answer these claims and conduct discovery, which has now closed. To the extent Powerex seeks to file a dispositive motion as to these claims, it will have the opportunity to do so by way of a summary judgment motion in due course and after obtaining leave of Court.

This Court expresses no view on the strength of Fusion's new factual allegations, some of which have been known to Fusion since the early stages of discovery. While this decision strains the boundary of the liberal standard of Rule 15(a), the Court must be guided by the Third Circuit's consistent recognition "that prejudice to the non-moving party is the 'touchstone for the denial of an amendment.'" *Arthur*, 434 F.3d at 204 (quoting *Lorenz*, 1 F.3d at 1414). Given the limited nature of Fusion's proposed amendment, the lack of undue prejudice to Powerex, and Rule 15's directive that leave to amend be freely granted, the Court is satisfied that Fusion has met the standard for filing its proposed amended complaint.

### III.     JOINT MOTION TO SEAL

The parties jointly move to seal portions of paragraphs 19 and 21 of the clean and redline versions of Fusion's proposed amended complaint [D.E. 99, 99-1], which Fusion filed as exhibits to the declaration of its counsel in support of the motion to amend. [D.E. 109]. All parties consent to the proposed sealing [D.E. 109-1 ¶ 1], and the motion is unopposed.[9]

The information the parties seek to seal consists of Powerex's product sales and pricing data, which Powerex produced to Fusion as "Confidential" pursuant to the Discovery Confidentiality Order entered in this action. [*Id.* ¶¶ 4-5, 7]. Counsel for Powerex certifies "[t]his

---

[9] The parties entered into, and emailed to the Court, a stipulation to seal the requested material. In response, the Court directed the parties to file a proposed consent order to maintain the proposed material under seal in accordance with the requirements of Local Civil Rule 5.3(c)(6). [D.E. 108].

information is confidential and unavailable to the public," [*Id.* ¶ 5], and argues that its public disclosure would "seriously impair[]," "irreparably harm," and "eviscerate" Powerex's competitive position because the information would reveal its "the actual pricing framework," which Powerex "has confidentially negotiated with a very important customer in a highly competitive bidding environment." [*Id.* ¶¶ 5-6, 8; D.E. 109-3]. Finally, Powerex asserts there is no less restrictive means available to protect the information. [D.E. 109-3].

Although there exists in civil cases a common law public right of access to judicial proceedings and records, that right is not absolute, and the presumption of public access is rebuttable. *See In re Cendant Corp.*, 260 F.3d 183, 192, 194 (3d Cir. 2001). In this District, the party seeking to seal part of the judicial record bears the burden of demonstrating that good cause exists to overcome the presumption in favor of public access. *China Falcon Flying Ltd. v. Dassault Falcon Jet Corp.*, Civ. No. 15-6210, 2017 WL 3718108, at *2 (D.N.J. Aug. 29, 2017). The moving party must make a "particularized showing that disclosure will cause a 'clearly defined and serious injury to the party seeking closure.'" *Securimetrics, Inc. v. Iridian Techs., Inc.*, Civ. No. 03-04394, 2006 WL 827889, at *2 (D.N.J. Mar. 30, 2006) (quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994)). General allegations of harm are insufficient; rather, the movant must give "specific examples or articulated reasoning" that harm will result. *In re Cendant Corp.*, 260 F.3d at 194.

"This [good cause] standard was incorporated into this District's Local Civil Rule 5.3, which sets forth the requirements for a motion to seal." *City of Sterling Heights Gen. Emps. Ret. Sys. v. Prudential Fin., Inc.*, Civ. No. 12-5275, 2016 WL 234838, at *1 (D.N.J. Jan. 19, 2016). Local Civil Rule 5.3(c) requires, in relevant part, that the reviewing Court consider certain

factors "as well as other findings required by law." L. Civ. R. 5.3(c)(6). The factors include: (a) the nature of the materials or proceedings at issue; (b) the legitimate private or public interest which warrants the relief sought; (c) the clearly defined and serious injury that would result if the relief sought is not granted; and (d) why a less restrictive alternative to the relief sought is not available. L. Civ. R. 5.3(c)(3).

      The Court finds the parties' request to seal is warranted. Their agreement that the subject information qualifies for confidential treatment under the applicable order, while not dispositive, weighs in favor of protecting the information from public disclosure. *See Goldenberg v. Indel, Inc.*, Civ. No. 09-5202, 2012 WL 15909, at *2 (D.N.J. Jan. 3, 2012). The legitimate interest in preventing widespread disclosure of sensitive business and financial information that could weaken Powerex's competitive position also supports sealing. *See id.* at *3 (recognizing that confidentiality of "business agreements, trade secrets or commercial information are a legitimate private interest[,] and the disclosure of this information can be used for the improper purpose of causing harm to the litigant's competitive standing in the marketplace") (collecting cases); *see also Bracco Diagnostics, Inc. v. Amersham Health Inc.*, Civ. No. 03-6025, 2007 WL 2085350, at *7 (D.N.J. July 18, 2007) ("Maintaining competitiveness is a legitimate private interest which warrants sealing."). In the same vein, disclosure of Powerex's product sales and pricing data would likely result in a clearly defined and serious injury "by providing competitors an unfair market advantage." [D.E. 109-3]; *see also Overton v. Sanofi-Aventis U.S., LLC*, Civ. No. 13-05535, 2014 WL 1554718, at *2 (D.N.J. Apr. 9, 2014) (recognizing that "publicly exposing a party's business information might harm that party's competitive standing," and the mere possibility of such harm may be sufficient to warrant the sealing).

Finally, the Court discerns no less restrictive alternative available than the parties' proposal, which seeks to seal only certain allegations of the proposed amended complaint, and not its entirety. To that end, Fusion has already filed a redacted version of the pleading. *See* D.E. 98-1. The Court also notes that it previously granted a motion to seal documents containing Powerex's business information, including records concerning its customers, product sales and bookings, billings against estimates, product back logs, financial condition, and business strategy. [*See* D.E. 74]. Such relief is similarly appropriate in this instance.

Accordingly, for the foregoing reasons, the Court finds good cause exists to seal the proposed portions of paragraphs 19 and 21 of the clean and redline versions of Fusion's proposed amended complaint, which are filed at D.E. 99 and 99-1.

### IV.   CONCLUSION AND ORDER

Accordingly, the Court finds, in its discretion, that the relief sought in the joint motion to seal and the motion to amend is warranted, and

**IT IS** on this 7th day of November, 2023,

**ORDERED** that Fusion's motion for leave to file an amended complaint [D.E. 98] is **GRANTED**; and it is further

**ORDERED** that within seven days of the date of this Order, Fusion shall file the amended complaint in the form filed at D.E. 99; and it is further

**ORDERED** that Powerex shall respond to the amended complaint as provided by the Rules; and it is further

**ORDERED** that the joint motion to seal [D.E. 109] the documents filed at D.E. 99 and 99-1 is **GRANTED**; and it is further

**ORDERED** that the documents filed at D.E. 99 and 99-1 shall be permanently sealed and maintained under seal by the Clerk of Court; and it is further

**ORDERED** that the Court will hold a telephonic status conference on December 4, 2023, at 11:00 a.m., to be joined by dialing 866-434-5269, access code 1874589. At least three business days prior, the parties shall file a joint status letter, not to exceed three pages double-spaced, addressing the status of settlement discussions and proposed next steps; and it is further

**ORDERED** that the Clerk of Court shall terminate the motions at D.E. 98 and 109.

      /s/ *André M. Espinosa*
    ANDRÉ M. ESPINOSA
    United States Magistrate Judge