NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| FUSION SOURCING GROUP, INC, <br><br>　　　　　　　Plaintiff, <br><br>v. <br><br>POWEREX, INC., <br><br>　　　　　　　Defendant. | Civil Action No.: 19-12289 <br><br> **OPINION & ORDER** |

**CECCHI, District Judge.**

## I.　INTRODUCTION

Before the Court is defendant Powerex Inc.'s ("Powerex" or "Defendant") motion for summary judgment (ECF No. 130) and plaintiff Fusion Sourcing Group, Inc.'s ("Fusion" or "Plaintiff") motion for partial summary judgment (ECF No. 131). Plaintiff opposed Defendant's motion (ECF No. 136), and Defendant replied in support (ECF No. 139). Defendant opposed Plaintiff's motion (ECF No. 134), and Plaintiff replied in support (ECF No. 138). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, both motions are **DENIED**.

## II.　BACKGROUND[1]

This dispute concerns which agreement governs the parties' sales representative relationship, and thus whether Plaintiff has a right to certain post-termination commissions.

---

[1] Background facts are taken from the pleadings, evidence, and parties' affirmative and responsive statements of material fact, pursuant to Local Civil Rule 56.1. *See* Defendant's Statement of Material Facts, ECF No. 130-2 ("Def. SMF"); Plaintiff's Statement of Material Facts, ECF No. 131-3 ("Pl. SMF"); Plaintiff's Responses to Defendant's Statement of Material Facts, ECF No. 137; Defendant's Responses to Plaintiff's Statement of Material Facts, ECF No. 135; Defendant's Reply to Plaintiff's Responses to Defendant's Statement of Material Facts, ECF No. 140; Declaration of Adam J. Glazer, ECF No. 131-3 ("Glazer Decl."); Declaration of Gary

Plaintiff Fusion is a New Jersey-based sales representative company, formed in 2008 as a combination of two sales representative entities, Bob Dean, Inc. and R.E. Breuer Co., Inc. Pl. SMF ¶¶ 1–4; Def. SMF ¶ 6. Defendant Powerex is a Pennsylvania-based manufacturer and supplier of high-power semiconductor products. Def. SMF ¶¶ 1, 3.

In or around 1986, Powerex engaged Bob Dean, Inc. to serve as a sales representative to promote the sale and solicit orders of designated Powerex products from customers in an assigned territory. Pl. SMF ¶ 11. At some point after 1986, R.E. Breuer Co., Inc. became a Powerex sales representative in service of a different territory. Def. SMF ¶ 9; Glazer Decl. Ex. 5 at 13. In May 2006, Bob Dean, Inc. and R.E. Breuer Co., Inc. each executed separate written representative agreements (the "2006 Agreements") with Powerex. Pl. SMF ¶ 11. The 2006 Agreements contained provisions governing the parties' business relationship. Def. SMF ¶ 13. The contract had a one-year term, set to terminate on December 31, 2006. Glazer Decl. Ex. 5 at 1, Ex. 6 at 1. Each Agreement included identical Articles 17 (Termination), Articles 22 (Governing Law), and Articles 18 and 19 (Limitations on Liability). The Agreements also included Schedules A, B, and C: Schedule A provides a list of the company's territories; Schedule B is a list of "House Accounts;" and Schedule C lists the commissions to be earned by category, percent net resale and size of sales, or the sales level. Def. SMF ¶ 14.

According to Article 17, the 2006 Agreements can be terminated pre-expiration: (1) by agreement in writing between Powerex and the Representative; or (2) by either party at will with a written letter of termination, with termination effective thirty days following the postmark date; or (3) by Powerex upon one day's notice based on specific conduct of the Representative and other

---

Chessen, ECF No. 131-2 ("Chessen Decl."); and Declaration of Jacqueline M. Weyand, ECF No. 130-3 ("Weyand Decl.").

circumstances. Def. SMF ¶ 17. If the termination is the result of options (1) or (2), the foregoing applies:

> The Representative will earn commissions on Distributor Sales (as described in Schedule C and defined in Paragraph 3.5) only up to and including the termination date; and
>
> The Representative will earn commissions on the Sales of Products (as described in Schedule C and defined in Paragraphs 3.4, 3.6, 3.7 and 3.8) generated by orders books directly by Representative and accepted by Powerex prior to the termination date and shipped within 90 days following such termination date.

Article 17 also states:

> It is expressly understood that a commission will be considered to be "earned" for purposes of Article 17 strictly in accordance with the provisions of Article 5 [Commissions] and that any commission so earned will be payable to the Representative strictly in accordance with Article 6 [Payment of Commissions].

Glazer Decl., Exs. 5, 6. Article 22 of the 2006 Agreements states: "The validity, construction and interpretation of this Agreement, the rights and obligations of the parties hereto and every matter arising therefrom shall be governed by the laws of the state of Pennsylvania, U.S.A as such laws are applied to agreements to be performed within Pennsylvania." *Id*.

Each Agreement's Schedule C set forth the commission amount by category, percent of net resale, and the volume of sales. *Id*. The Schedules in each Agreement were not identical. *Compare* Glazer Decl. Ex. 5 *with* Glazer Decl. Ex. 6. Schedule C notes that the listed commissions are "full consideration for the services performed by the Representative under this Agreement and for the Representative's compliance with all of the terms and conditions herein contained." *Id*.

The 2006 Agreements state that each Agreement terminates on December 31, 2006. Glazer Decl., Exs. 5, 6. However, Bob Dean, Inc. and R.E. Breuer Co., Inc. continued to serve as sales representatives for Powerex after December 31, 2006. ECF No. 140 ¶ 29. In 2008, R.E. Breuer

3

Co., Inc. and Bob Dean, Inc. formally merged to become Fusion.[2] Charles Tanzola,[3] former Vice President of Business Development at Bob Dean, Inc., and Gary Chessen, former President and Chief Executive Officer at R.E. Breuer Co., Inc., became principals and officers of Fusion. Def. SMF ¶¶ 10–12. After its formation, Fusion continued its predecessors' role as sales representative for Powerex, whereby Powerex paid Fusion a commission on a percentage of sales in Fusion's assigned territory. Pl. SMF ¶ 11. However, the parties did not renew the 2006 Agreements in writing. Def. SMF ¶ 28; Pl. SMF ¶¶13–18. Powerex's Director of Sales, Jerry Wolfgang, decided to stop sending Powerex's existing sales representatives yearly written agreements, as was prior practice. Pl. SMF ¶ 17. Wolfgang testified that after 2006, Powerex's sales representative agreements were "handshake agreement[s]" or "verbal agreements," and that Powerex and Fusion "basically had a handshake agreement to continue on with that same contract." Weyand Decl. Ex. 6, 17:15–20:19.

The only written document signed by both Fusion and Powerex in the record is a document titled "Schedule C," executed on November 30, 2017, which sets forth sales representative commission rates to be effective in 2018 ("2018 Schedule C").[4] Pl. SMF ¶ 18. The commission rates were between 3% and 9% of net sales, which varied based on the type of customer and the total dollar amount of sales. *Id.*

---

[2] The parties agree that Fusion "was established informally in 2004 and formally in 2008," ECF No. 140 ¶ 6, but that the two 2006 Agreements were between Bob Dean, Inc. and Powerex and R.E. Breuer Co., Inc. and Powerex, respectively—not Fusion and Powerex.

[3] The Court notes that Charles Tanzola passed away on December 7, 2023. ECF No. 140 ¶ 7.

[4] At some point in or around 2013 or 2014, Powerex changed the commission rates it paid to Fusion. ECF No. 140 ¶ 38. However, this was not memorialized in a signed agreement, although Defendant contends that the commission rates were modified in accordance with an unsigned 2014 "Schedule C." Def. SMF ¶ 38; Weyand Decl. Ex. 7.

In February 2018, Powerex sent Fusion a proposed, new written representative agreement. ECF No. 140 ¶ 44. Fusion rejected the proposed agreement. *Id.*; Pl. SMF ¶ 29. On January 9, 2019, Powerex sent Fusion a written notice stating that they were immediately terminating the "Manufacturer's Representative Agreement" between the parties pursuant to "clause 17.1.2" and stated that Powerex "will continue to pay commission through April 9, 2019 against all scheduled backlog orders that exist as of February 9, 2019 and shipped on or before April 9, 2019." Pl. SMF ¶ 30.

On May 8, 2019, Plaintiff commenced this action against Defendant for breach of contract (Count I), breach of the implied covenant of good faith and fair dealing (Count II), violation of the New Jersey Sales Representatives' Rights Act ("SRRA"), N.J.S.A. § 2A:61A *et seq.* (Count III), unjust enrichment, pleaded in the alternative to Counts I and II (Count IV), and quantum meruit, pleaded in the alternative to Counts I and II (Count V). ECF No. 1; *see also* ECF No. 115.

## III.   **LEGAL STANDARD**

Summary judgment is appropriate if the "depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials," demonstrate that there is no genuine issue as to any material fact (Fed. R. Civ. P. 56), and, construing all facts and inferences in a light most favorable to the non-moving party, "the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 145–46 (3d Cir. 2004). Once the moving party has satisfied this burden, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions

made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006). To meet its burden, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56); *see also Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) ("To raise a genuine issue of material fact," the opponent must "exceed[ ] the 'mere scintilla' threshold. . . ."). An issue is "genuine" if it is supported by evidence, such that a reasonable jury could return a verdict in the non-moving party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. *See id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex*, 477 U.S. at 322.

### IV.     DISCUSSION

Defendant moves for summary judgment on the issues of breach of contract, breach of the implied covenant of good faith and fair dealing, violation of the SRRA, unjust enrichment, and quantum meruit. Plaintiff moves for partial summary judgment on the issues of breach of contract and violation of the SRRA.

The threshold issue for both parties' motions for summary judgment is whether the operative agreement at termination was (1) an implied-in-fact contract consisting of the same terms as the 2006 Agreements, as Defendant argues, or (2) the 2018 Schedule C signed by both parties, as Plaintiff argues. For the reasons set forth below, the Court finds that genuine issues of material fact exist regarding this issue. Accordingly, both motions for summary judgment are denied.

### A. The Parties' Positions

Plaintiff argues that the only agreement between Fusion and Powerex at the time Powerex terminated their sales representative relationship was the 2018 Schedule C. ECF No. 131-1 at 7. Plaintiff contends that the 2018 Schedule C included essential terms of the parties' contractual relationship, including the rates of compensation and how Fusion earns commissions. *Id.* at 8. These essential terms are sufficiently definite, Plaintiff concludes, and any gaps left by the parties should not frustrate their intention to be bound. *Id.* (citing *Flanzman v. Jenny Craig, Inc.*, 244 N.J. 119, 135 (2020)). One such gap is a provision governing post-termination commissions. When a contract is silent on post-termination commissions, Plaintiff argues that New Jersey law entitles Fusion to commissions on all pre- and post-termination sales for which Fusion was the "efficient procuring cause." *Id.* at 10–13. Therefore, Plaintiff claims Powerex breached the 2018 Schedule C agreement—among other claims—and as a result owes Fusion a total of $581,591.98 in unpaid commissions. *Id.* at 16–17; Chessen Decl. ¶ 27.

Defendant contends that there was no breach, because Fusion is bound by the terms of the 2006 Agreements, and Powerex complied with the 2006 Agreement provisions covering termination and post-termination commissions. The 2006 Agreements contain identical Article 17 provisions governing post-termination commissions. ECF No. 140 ¶ 16. Article 17 states that the sales representative will "earn" commissions "only up to and including the termination date."

7

Chessen Decl., Exs. 5, 6. "Earned" commissions include those generated by orders booked directly by the sales representative, accepted by Powerex prior to the termination date, and "shipped within 90 days following such termination date." *Id*. Defendant states Powerex paid Fusion commissions in accordance with Article 17 of the 2006 Agreements and owes nothing further. ECF No. 130-1 at 16–17.

Plaintiff disputes that the 2006 Agreements applied to Fusion and Powerex's relationship at the time of termination. First, Plaintiff notes that the 2006 Agreements were two separate agreements between Powerex and Bob Dean, Inc. and Powerex and R.E. Breuer Co., Inc. Pl. SMF ¶¶ 13–18. Fusion was not a party to either 2006 Agreement. *See* Chessen Decl., Exs. 5, 6. Second, Plaintiff argues that the 2006 Agreements expired "by their plain terms" on December 31, 2006. ECF No. 136 at 5–6; Pl. SMF ¶ 13, 15. Plaintiff does not explain whether any agreement—written or oral—replaced the 2006 Agreements, or whether the parties operated under any written or implied terms when Bob Dean, Inc. and R.E. Breuer Co., Inc. merged. But that is immaterial, according to Plaintiff, because the parties entered into a written agreement on November 30, 2017 (the 2018 Schedule C) that controlled the parties' relationship at the time of termination. ECF No. 136 at 5. Plaintiff states the 2018 Schedule C was the only written agreement the parties ever executed. *Id.* at 6. Plaintiff contends that Powerex knew that the parties were not operating under the 2006 Agreements, because Powerex tried "to reinstate the terms [of the 2006 Agreements] by proposing a new written agreement in 2018 with "specifically the terms that Powerex now wants to enforce." *Id.* at 8. But Plaintiff refused the terms and did not sign. Pl. SMF ¶ 29.

Defendant, on the other hand, views the 2018 Schedule C as "merely an attachment" to an implied-in-fact contract that succeeded the 2006 Agreements. ECF No. 130-1 at 22; ECF No. 134 at 6. Defendant argues that "the parties' communications and conduct established an objective

8

manifestation of assent on the part of Fusion and Powerex to continue to abide by the terms of the [2006 Agreements]." ECF No. 130-1 at 22. Defendant disputes Plaintiff's argument regarding the proposed written agreement in 2018, contending that Powerex was attempting to replace the 2006 Agreements, not to reinstate the 2006 Agreements. ECF No. 139 at 2. When Plaintiff refused to sign, Defendant states that the parties continued to operate under the terms of the 2006 Agreements. ECF No. 135 ¶ 29.

### B. Disputed Material Facts

To determine whether either party is entitled to summary judgment, the Court must first ascertain whether the 2018 Schedule C or the alleged implied-in-fact 2006 Agreement was the operative agreement at the time of Powerex's termination letter. The Court cannot do so based on undisputed facts, and so summary judgment must be denied.

#### 1. Plaintiff's Motion

To grant Plaintiff's motion for partial summary judgment, the Court must find that the 2018 Schedule C was the operative contract between Fusion and Powerex at the time of termination. But the parties dispute the function of the 2018 Schedule C, which presents an issue of intent. Under New Jersey law,[5] "[d]iscerning contractual intent is a question of fact unless the provisions

---

[5] Defendant contends that Pennsylvania law applies in this matter because the 2006 Agreements contain a choice of law provision stating that all matters arising from the Agreements "shall be governed by the laws of Pennsylvania." ECF No. 130-1 at 25; Weyand Decl., Ex. 4 at 10, Article 22, Ex. 5 at 10, Article 22. However, a threshold dispute in this matter is whether the terms of the 2006 Agreements are binding on Fusion. The Court will not enforce a provision of an agreement for which enforceability has yet to be determined. *See, e.g.*, *Azer Sci. Inc. v. Quidel Corp.*, No. 21-2972, 2021 WL 5918655, at *4 (E.D. Pa. Dec. 15, 2021) (declining to apply a forum selection clause where mutual assent to the contract was disputed). Defendant provides no briefing on why Pennsylvania law should apply apart from the 2006 Agreements' choice of law provision, and has argued pursuant to New Jersey law in other motions before the Court in this matter. *See* ECF No. 8 (relying on New Jersey law in Defendant's motion to dismiss); ECF No. 103 (relying on New Jersey law in Defendant's opposition to Plaintiff's motion for leave to amend). Furthermore, Fusion's principal place of business is in New Jersey, and Fusion's territory for Powerex included

of a contract are wholly unambiguous." *Jaasma v. Shell Oil Co.*, 412 F.3d 501, 507 (3d Cir. 2005) (citations and internal quotation marks omitted).

Defendant points to several facts in the record that question the intended function of the 2018 Schedule C and create a genuine dispute of material fact. Plaintiff contends that the 2018 Schedule C is a standalone contract and the only operative contract at the time Powerex terminated their relationship. ECF No. 131-1 at 7. Plaintiff's lawsuit is based on Powerex's alleged breach of the 2018 Schedule C. *See* ECF No. 115 ¶ 8. But Defendant argues that the 2018 Schedule C was an updated attachment to an implied contract between the parties, because it was originally an attachment to the 2006 Agreements. ECF No. 134 at 3–4. For example, the 2018 Schedule C refers to "the services performed by the Representative under this Agreement." Chessen Decl. Ex. A at 4. Defendant argues that "this Agreement" refers to the 2006 Agreements, indicating that the 2018 Schedule C is merely an attachment to the 2006 Agreements. ECF No. 134 at 8–9. Plaintiff contends that "this Agreement" means the 2018 Schedule C. ECF No. 138 at 6–7. This dispute illustrates a genuine dispute of material fact as to the intended purpose of the 2018 Schedule C, and precludes summary judgment in favor of Plaintiff. *Starr v. Katz*, No. 91-3365, 1994 WL 548209, at *7 (D.N.J. Oct. 5, 1994) ("[I]f a contract is susceptible of more than one meaning, then the ambiguity creates a question of fact that will preclude summary judgment.").

2. **Defendant's Motion**

To grant Defendant's motion for summary judgment, the Court must find that the parties' conduct amounted to an implied-in-fact contract. But "whether parties' interactions rise to the level of creating an implied contract is generally a question of fact best resolved by the jury."

---

all of New Jersey. ECF No. 136 at 13. Therefore, "[t]he Court sees no reason to deviate from the parties' [prior] assumptions that New Jersey law applies." *Wilson v. RoundPoint Mortg. Servicing Corp.*, No. 21-19072, 2022 WL 3913318, at *2 (D.N.J. Aug. 31, 2022).

*Comprehensive Neurosurgical, P.C. v. Valley Hospital*, 312 A.3d 243 (N.J. 2024); *see also Troy v. Rutgers*, 774 A.2d 476, 483 (N.J. 2001) ("Whether the parties acted in a manner sufficient to create implied contractual terms is a question of fact generally precluding summary judgment."); *Katz v. Ambit Ne., LLC*, No. 20-1289, 2021 WL 2680184, at *5 (D.N.J. June 29, 2021) (finding that the existence of an implied contract "is an issue of fact, ordinarily left to the jury"). Furthermore, the record contains conflicting evidence regarding intent of the parties, which "is a question for the fact finder." *Smith v. Exxon Mobil Corp.*, 374 F. Supp. 2d 406, 422 (D.N.J. 2005).[6]

There is a genuine dispute of material fact as to whether the parties' interactions between 2007 and Powerex's termination letter amount to an implied-in-fact contract with the same terms as the 2006 Agreements. ECF No. 130-1 ("Powerex and Fusion disagree as to . . . whether the series of interactions and communications between the parties subsequent to the expiration of the 2006 Representative Agreement formed an implied-in-fact contract."); ECF No. 138 (Plaintiff arguing that "Powerex's defense to Fusion's Motion rests entirely on the flawed premise that an implied-in-fact agreement controlled the parties' relationship").

First, the parties dispute whether the relationship between Powerex and Fusion "continued to function as it did under the [2006 Agreements]." *See* ECF No. 140 ¶ 29. Defendant argues that the relationship "remained the same after 2006," citing to Gary Chessen's deposition testimony that "the relationship in terms of us promoting the product and the company and the services had not changed." *Id.* Plaintiff disagrees, citing Chuck Tanzola's testimony that "there were natural

---

[6] Pennsylvania law aligns with New Jersey law on this issue. *See Reynolds Packaging KAMA, Inc. v. Inline Plastics Corp.*, No. 08-1902, 2011 WL 5089500, at *6 (M.D. Pa. Oct. 25, 2011) ("[T]he issue of whether a contract has arisen between two parties generally presents a question of fact, particularly where the record contains conflicting evidence regarding intent."); *Channel Home Centers v. Grossman*, 795 F.2d 291, 300 (3d Cir.1986) ("Under Pennsylvania law, when the record contains conflicting evidence regarding intent, the question of whether the parties formed a completed contract is one for the trier of fact.").

changes in terms of we had a single entity review as opposed to two entities," and various excerpts of Chessen's deposition that conflict with Defendant's assertion. *Id.* Furthermore, Defendant contends that Powerex and Fusion "had a handshake agreement to continue on with [the 2006 Agreements]" after 2006. *Id.* ¶ 31. Plaintiff characterizes this as misleading, drawing a distinction between a "handshake agreement" and "*basically* a handshake agreement." *Id.* (citing Deposition Transcript of Jerry Wolfgang, Weyand Decl. Ex. 6, 18:11–16) (emphasis in original). The nature and mutual understanding of the parties' relationship after 2006 is central to the issue of whether an implied agreement existed. This disputed material fact precludes summary judgment.

Second, Defendant describes the implied contract as a continuation of a singular "2006 Representative Agreement." ECF No. 130-1 at 1. Plaintiff disputes this as a mischaracterization, contending that there was no singular agreement, but rather two 2006 Agreements with Bob Dean, Inc. and R.E. Breuer Co., Inc., and could not have continued as an implied contract because the entities (Bob Dean, Inc. and R.E. Breuer Co., Inc.) no longer existed. *See* ECF No. 136 at 8; ECF No. 140 ¶ 13. Furthermore, the 2006 Agreements were different, including different territories, different "House Accounts" and different commission structures. *Compare* Chessen Decl., Ex. 4 *with id.*, Ex. 5. Whether the 2006 Agreements constituted one "2006 Representative Agreement" between Powerex and Fusion is material to the issue of whether an implied contract existed as a successor to this purportedly singular agreement. Therefore, this is a disputed material fact that precludes summary judgment.

Third, the parties disagree about whether there was any "written, executed representative agreement between the parties beyond the [2006 Agreements]." ECF No. 140 ¶ 28. As discussed, Plaintiff believes that the 2018 Schedule C is a standalone written agreement governing the parties' sales representative relationship. *Id.* Defendant sees the 2018 Schedule C as an attachment to

what they say is a singular "2006 Representative Agreement" between Powerex and Fusion. *Id.* The parties' intent behind the 2018 Schedule C is material to determining which agreement governed the parties' relationship at the time of termination. Therefore, whether a written agreement existed between the parties after 2006 is a disputed material fact precluding summary judgment.

**Accordingly**, for the reasons set forth above, **IT IS**, on this 25th day of March, 2025,

**ORDERED** that Defendant's motion for summary judgment (ECF No. 130) and Plaintiff's motion for partial summary judgment (ECF No. 131) are **DENIED**.

**SO ORDERED.**

*/s/ Claire C. Cecchi*
**CLAIRE C. CECCHI, U.S.D.J.**